IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **ROBERT INGRUM** | § | |
| | § | |
| *Plaintiff*, | § | **No. 07-121** |
| | § | |
| **v.** | § | |
| | § | **Hon. Mary Ellen Coster Williams** |
| | § | |
| **THE UNITED STATES OF AMERICA** | § | |
| | § | |
| *Defendant*. | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT THEREOF**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Robert Ingrum ("Plaintiff"), through his undersigned counsel, responding to The United States of America's ("Defendant") Motion to Dismiss, and in support would show as follows:

## I. SUMMARY

1.1 Defendant has moved, pursuant to Rules 12(b)(1) and 12(h)(3) of the Rules of the United States Court of Federal Claims ("RCFC"), to dismiss Plaintiff's action for lack of jurisdiction, alleging that Plaintiff untimely filed this action under 28 U.S.C. § 2501. The sole basis of Defendant's motion is that Plaintiff did not file this action within the six (6) year limitations period set forth in 28 U.S.C. § 2501. Plaintiff's response, as set forth in greater detail below, is that the Defendant's acts of taking Plaintiff's property for use in its road construction operation were "inherently unknowable" at the time it occurred.

## II.
## FACTUAL BACKGROUND

2.1 In 1998, Plaintiff purchased 3,300 acres of rural, undeveloped land near Candelaria, Texas. Plaintiff had the property under contract for three or four years preceding closing, during which time he had access to the property. Due to the rural nature of the property and the length of the drive from his home in Austin, Texas (approximately 600 miles; a 15 hour drive), Plaintiff visited the property approximately once a year.

2.2 The only access into and across the subject property is a portion of an unpaved road that connects to Highway 170, and is known as the "River Road." The "River Road" is used by the United States Border Patrol to interdict narcotics and smugglers. From March through April of 1999, the Army Corps of Engineers completed a mission to repair several miles of the road.

2.3 The "River Road" crosses the land of several private landowners, including Plaintiff's ranch. Before beginning work on the road, the Government obtained written "Rights of Entry" to allow the Government to enter onto the owner's land to repair the road. The "Rights of Entry", however, specifically prohibited the Government from using materials from Plaintiff's land without Plaintiff's permission. Plaintiff executed said agreement on March 13, 1999.

2.4 When attempting to access his property after completion of the road work by the Army Corps of Engineers, Plaintiff discovered that he was unable to enter his property because the road had been reworked in such a fashion that it had no drainage and the road and the surrounding area had been rendered a virtual lake. During the ensuing five years, Plaintiff (1) attempted to enter his property personally on five or six occasions, only to find that the entrance was impassable, and (2) stayed in frequent contact with the Border Patrol by telephone on

numerous occasions to determine if he was able to access his property if me made the arduous drive from Austin, only to be told that the entrance to the property was impassable. While Plaintiff was aware that the Defendant had poorly constructed the road that he had given access to his property for Defendant to rebuild, he was in no way put on notice that Defendant had violated the "Rights of Entry" agreement by using his property in the construction of the road without his permission.

2.5 In May of 2004, Plaintiff was informed by a neighboring property owner (who had trespassed upon the property from his adjoining land to access the Rio Grande River) that, for use in the reconstruction of the River Road on Plaintiff's property, the Defendant had excavated a substantial amount of landfill from Plaintiff's property for use as road base. Removal of the materials left a pit on Plaintiff's property with an approximate area of 35,000 sq. ft. and a depth of approximately twenty feet. This material was removed without the Plaintiff's knowledge or consent. Because the Defendant's "mal-construction" of the road had thus far prohibited Plaintiff from accessing his property, and because the excavation pit was not visible from the only normal entrance to the property, the damage was undiscoverable to Plaintiff until he was thusly informed.

2.6 Upon discovering that the Defendant had taken his property for use in the road construction without his permission, Plaintiff immediately took steps to receive compensation for his damages. After exhausting his administrative remedies, he filed suit on August 2, 2006.

2.7 Plaintiff's affidavit setting forth these facts is attached hereto as Exhibit A, and incorporated herein by reference the same as if fully set forth at length.

## III.
## ARGUMENT

3.1 Plaintiff's discovery of the Defendant's actions in taking his property without his authority occurred during the spring of 2004. Prior to that time, when a neighbor discovered the excavation pit while trespassing upon Plaintiff's property on foot from the neighbor's adjacent property, Plaintiff had no reason to believe that the Defendant had violated the "Rights of Entry" agreement. Plaintiff was unable to access his property through normal means because of Defendant's malfeasance in constructing the road improperly, and was completely unaware of the existence of the excavation pit that revealed the Defendant's breach of the "Rights of Entry" agreement.

3.2 The Defendant claims in Section III of its motion that "(t)he excavation pit allegedly created by the Government on Plaintiff's property was in plain view, as a neighbor allegedly brought the pit to Plaintiff's attention." However, the pit was not in plain view **from the impassable entry of the property**. Only if one found a way to access the property could one then discover that the pit was in "plain view". Plaintiff had no cause to take extraordinary measures to access his property because he was not required to assume that the Defendant had breached the "Rights of Entry" agreement. It would be illogical to conclude that the fact that Plaintiff knew that Defendant was reconstructing the road on his property created constructive knowledge that Defendant also was violating its agreement.

## IV.
## LAFONT V. UNITED STATES IS DISTINGUISHABLE

4.1 Defendant relies primarily upon the case of LaFont v. United States, 17 Cl. Ct. 837 (1989) for the proposition that limitations should have begun to run in this case when the road construction started on Plaintiff's property in 1999. LaFont involved a very distinguishable

situation where the Corp of Engineers conducted dredging operations in a waterway where LaFont's oyster lease was located. The conclusion there is simple: Dredging involves the removal of the bed of the waterway…oyster beds are located on the bed of the waterway…therefore, it would put one on notice that if dredging was occurring over one's oyster beds, the beds would very likely be dredged away. In the present case, however, the same logic does not hold. Reconstruction of a gravel road involves grading and reshaping…the Government entered into an agreement that it would not use the property owner's soil for the construction without his permission…the Government completely mis-constructed the road to have a concave face, thus collecting and pooling water instead of shedding water…the property owner is unable to access his property because of the Government's mistake. Where is the property owner put on notice that the Government has also violated its "Rights of Entry" agreement and converted 35,000 yards of the property owner's soil to construct this White Elephant?

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Robert P. Ingrum, prays that after due proceedings are had, Defendant's Motion to Dismiss be denied and that Plaintiff have his day in court.

Dated this 18th day of April, 2007.

Respectfully submitted,

**MINTON, BURTON, FOSTER & COLLINS**
A Professional Corporation
1100 Guadalupe Street
Austin, Texas 78701
512/476-4873 (telephone)
512/479-8315 (telecopier)

/s/ John C. Carsey__
JOHN C. CARSEY
State Bar No. 03898800

*Attorneys for Plaintiff*

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ROBERT INGRUM** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| | § | |
| | § | |
| | § | **No. 07-12L** |
| **v.** | § | |
| | § | **Hon. Mary Ellen Coster Williams** |
| **THE UNITED STATES OF AMERICA** | § | |
| | § | |
| *Defendant.* | § | |

AFFIDAVIT OF ROBERT INGRUM

State of Texas §
§
County of Travis §

BEFORE ME, the undersigned authority, on this day appeared Robert Ingrum, who is personally known to me, and first being duly sworn, according to law, stated as follows:

1) "My name is Robert Ingrum. I am over twenty-one (21) years of age, of sound mind and fully capable of executing this affidavit. I have personal knowledge of the facts contained herein and am fully competent to execute this affidavit. The facts stated in this affidavit are all true and correct.

2) In 1998, I purchased 3,300 acres of rural, undeveloped land near Candelaria, Texas. I had the property under contract for three or four years preceding closing, during which time I had access to the property. Due to the rural nature of the property and the length of the drive from my home in Austin, Texas (approximately 600 miles; a 15 hour drive), I am only able to visit the property approximately once a year. Because it is undeveloped property, there is no urgency or necessity to inspect the property on a more frequent basis.

3) The only access into and across the subject property is a portion of an unpaved

EXHIBIT A

road that connects to Highway 170, and is known as the "River Road." The "River Road" is used by the United States Border Patrol to interdict narcotics and smugglers. From March through April of 1999, the Army Corps of Engineers completed a mission to repair several miles of the road.

4) The "River Road" crosses the land of several private landowners, including my ranch. Before beginning work on the road, the Government obtained written "Rights of Entry" to allow the Government to enter onto the owner's land to repair the road. The "Rights of Entry", however, specifically prohibited the Government from using materials from my land without my permission. I executed said agreement on March 13, 1999.

5) When attempting to access my property after completion of the road work by the Army Corps of Engineers, I discovered that I was unable to enter my property because the road had been reworked in such a fashion that it had no drainage and the road and the surrounding area had been rendered a virtual lake. During the ensuing five years, I (1) attempted to enter my property personally on five or six occasions, only to find that the entrance was impassable, and (2) stayed in frequent contact with the Border Patrol by telephone on numerous occasions to determine if I was able to access my property if I made the arduous drive from Austin, only to be told that the entrance to the property was impassable. While I was aware that the Defendant had poorly constructed the road that I had given access to my property for Defendant to rebuild, I was in no way put on notice that Defendant had violated the "Rights of Entry" agreement by using my property in the construction of the road without my permission.

6) In May of 2004, I was informed by a neighboring property owner (who had trespassed upon the property on foot from his adjoining land to access the Rio Grande River) that, for use in the reconstruction of the River Road on my property, the Defendant had excavated a substantial amount of landfill from my property for use as road base. Removal of the materials left a pit on my property with an approximate area of 35,000 sq. ft. and a depth of approximately

twenty feet. This material was removed without my knowledge or consent. Because the Defendant's "mal-construction" of the road had thus far prohibited me from accessing my property, and because the excavation pit was not visible from the only normal entrance to the property, the damage was undiscoverable to me until I was thusly informed."

Further Affiant sayeth not.

Robert Ingrum, Affiant

SUBSCRIBED AND SWORN TO before me the undersigned authority, on this 20th day of April, 2007, to certify which witness my hand and official seal.

Karen Knapp Trikilis
Notary Public in and
for the State of Texas

NOTARY PUBLIC STATE OF TEXAS
KAREN KNAPP TRIKILIS
Notary Public, State of Texas
My Commission Expires
FEB. 20, 2009