**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ROBERT INGRUM,** | ) | |
| **Plaintiff,** | ) | **No. 07-12L** |
| **v.** | ) | **Hon. Mary Ellen Coster Williams** |
| **THE UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S REPLY MEMORANDUM**
**IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant, the United States, hereby submits its Reply Memorandum in support of its February 20, 2007, Motion to Dismiss.

**INTRODUCTION**

The United States moved to dismiss on the ground that this action was untimely filed under 28 U.S.C. § 2501. See Motion to Dismiss and Memorandum in Support Thereof at 1 (hereinafter, "Def.'s Opening Br."). The United States argues in its motion papers that Plaintiff's takings claim accrued in April, 1999 and, therefore, was untimely filed on January 9, 2007.[1/] Def.'s Opening Br. at 6-9. To have been timely filed, Plaintiff's takings claim would have had to accrue no later than January 9, 2001.

In his opposition brief, Plaintiff does not dispute that his takings claim accrued in April, 1999, when the United States repaired the road that runs along his property adjacent to the U.S.-

[1/] Plaintiff initially filed suit on August 2, 2006, but that action was dismissed to cure a potential jurisdictional problem arising under 28 U.S.C. § 1500. See Def.'s Opening Br. at 3. Although Plaintiff lost the benefit of that earlier filing date, it is immaterial since Plaintiff's takings claim should have been filed no later than April, 2005.

Mexican border.[2] But, rather, Plaintiff argues that the statute of limitations should be tolled. See Pltf.'s Br. at 1. Specifically, Plaintiff argues that it was difficult to access his property, so he did not learn that the government had excavated a 35,000 square foot pit on his property until the spring of 2004, when a neighbor brought the pit to his attention. Id. According to Plaintiff, "the Defendant's acts of taking Plaintiff's property for use in its road construction operation were 'inherently unknowable' at the time it occurred." See Pltf.'s Br. at 1. "Only if one found a way to access the property could one then discover that the pit was in 'plain view,'" Plaintiff argues. Id. at 4.

Plaintiff cites no precedent in support of his argument and, indeed, as shown below, the case law does not lend credence to his position. Rather, Plaintiff misconstrues the "inherently unknowable" prong of equitable tolling. As discussed below, "inherently unknowable" does not mean "difficult to discover" as Plaintiff's argument suggests. To the contrary, "inherently unknowable" means "that which is unknowable by its very essence, i.e., its existence at the critical moment simply cannot be ascertained." Catellus Dev. Corp. v. United States, 31 Fed. Cl. 399, 407 (1994). Accordingly, because Plaintiff failed to meet his burden of showing by a preponderance of the evidence that this Court has jurisdiction (see id. at 405), this action must be dismissed with prejudice.

---

[2] Indeed, Plaintiff reiterates in his papers the allegation that "[f]rom March through April of 1999, the [government] completed a mission to repair several miles of the road." See Plaintiff's Response to Defendant's Motion to Dismiss and Memorandum in Support Thereof at 2 (hereinafter, "Pltf.'s Br."). As Defendant makes clear in its opening brief, Plaintiff's claim therefore accrued upon completion of the work in April, 1999. See Def.'s Opening Br. at 5-9.

## ARGUMENT

Plaintiff argues that the statute of limitations should be equitably tolled because "Defendant's acts of taking Plaintiff's property for use in its road construction operation were 'inherently unknowable' at the time it occurred."[3/] See Pltf.'s Br. at 1. However, the U.S. Court of Appeals for the Federal Circuit has never held that equitable tolling applies with respect to the general statute of limitations for Tucker Act claims, 28 U.S.C. § 2501. See Frazer v. United States, 288 F.3d 1347, 1352 (Fed. Cir. 2002); see also Martinez v. United States, 333 F.3d 1295, 1318 (Fed. Cir. 2003).

Assuming that the statute of limitations may be tolled, the case law suggests only two circumstances when it may be appropriate: (1) when the United States has prejudicially concealed facts; or (2) plaintiff's claims were inherently unknowable at the accrual date. See Alliance of Descendants of Tex. Land Grants v. United States, 37 F.3d 1478, 1482 (Fed. Cir. 1994) (citing Japanese War Notes, 337 F.2d at 359). Here, Plaintiff does not argue (nor does he allege in his Complaint) that the United States prejudicially concealed any facts. Instead, he relies upon the "inherently unknowable" prong for equitable tolling. As discussed below, Plaintiff wrongly equates his alleged difficulties in discovering the excavation pit with "inherently unknowable."

---

[3/] Plaintiff does not use the term "equitable tolling" in his argument, but his use of the phrase, "inherently unknowable," implies tolling. See Japanese War Notes Claimants' Ass'n of Phil., Inc. v. United States, 373 F.2d 356, 358-59 (Ct. Cl. 1967) (the running of the statute of limitations may be suspended when "defendant has concealed its acts with the result that plaintiff was unaware of their existence or it must show that its injury was 'inherently unknowable' at the accrual date.") (quoting Urie v. Thompson, 337 U.S. 163, 169 (1949)).

### A. The Statute of Limitations May Not Be Tolled Because Plaintiff's Takings Claim Was Not "Inherently Unknowable"

As Catellus makes clear, a claim is not inherently unknowable because it is "'somewhat difficult to discover,' or is 'not entirely obvious.'" Catellus, 31 Fed. Cl. at 407. To toll the statute of limitations under the "inherently unknowable" prong of equitable tolling, the claim by its very essence at the time of accrual must not be capable of being ascertained. Id. For example, a claim would be inherently unknowable at the accrual date "when defendant delivers the wrong type of fruit tree to plaintiff and the wrong cannot be determined until the tree bears fruit." Japanese War Notes, 373 F.2d at 359. The Catellus court, when confronted with facts similar to this case, rejected the plaintiff's tolling argument as this Court should, here.

In Catellus, the plaintiff owned about 1,920 acres of land adjacent to the Marine Corps Air Ground Combat Center at Twenty-nine Palms, California, which is in a remote area of the Mojave Desert. Catellus, 31 Fed. Cl. at 400. Catellus' property was so remote, the court noted, "that it is accessible only by helicopter or by a combination of off-road driving and hiking." Id. Apparently, no one from Catellus or its corporate predecessors had viewed the property from the time it was acquired in 1930 until 1990, when the Marine Corps gave company representatives a helicopter tour. Id. For decades, the United States used Catellus' land for artillery and anti-aircraft training, first under a lease in effect from 1952 to 1958, and thereafter under the erroneous belief that the land was part of the Marine Corps' installation. Id. at 400, 402. Catellus filed a takings action on July 24, 1991, after the Marine Corps told Catellus in 1989 that its land accidentally was used for live target practice and that "it is a virtual certainty that some unexploded ordnance is present there, above and below the surface." Id. at 401-03. The United

States moved to dismiss on the ground that Catellus' takings claim was barred by the statute of limitations, and the Court of Federal Claims agreed.

Catellus' takings claim would have survived the government's motion, if it accrued within the six-year period prior to suit, i.e., on or after July 24, 1985. Id. at 406. After finding that Catellus failed to carry its burden of showing that the bombardment of its property (which the court equated to a physical invasion effecting a taking) first began on or after the critical date, the court then analyzed whether the statute of limitations should be tolled. Id. at 406-407.

Catellus argued that the statute of limitations should be tolled because its takings claim was inherently unknowable as there were no readily visible signs of property damage from the air, it could not justify the cost of inspecting such a large amount of property, the terrain is inaccessible, and it was dangerous due to the risk of unexploded ordnance on its property, among other reasons. Id. at 407-408. Catellus argued that the statute of limitations should not begin to run until it had actual knowledge of military activities at its property. Id. at 407. The court rejected these arguments as "explanations for why [Catellus] didn't know about the claim," but they fail to explain why its claim was unknowable. Id.

The Catellus court observed:

> The fact that a plaintiff happens to be ignorant of a potential claim, whether because the plaintiff was not diligent in monitoring its land or because observing the taking would exact a hardship on plaintiff in terms of money, manpower, time and effort, is not enough to toll the statute. When a claim is inherently unknowable it does not mean that the claim is "somewhat difficult to discover," or is "not entirely obvious." That which is inherently unknowable is that which is unknowable by its very essence . . . .

Catellus, 31 Fed. Cl. at 407 (citing Japanese War Notes, 373 F.2d at 359). The court further noted that "[i]t is fair to charge a property owner with knowledge of what happens on his land, and the essence of Catellus' claim could have been discovered with the type of inquiry expected of a diligent property owner." Id. at 408. Furthermore, others were able to access their property in the vicinity, although under the same threat of unexploded ordnance. Id. Accordingly, the court refused to toll the statute of limitations. Id. at 408-09.

Here, as in Catellus, Plaintiff only offers explanations as to why he did not learn about his claim, but fails to explain why it was inherently unknowable. For example, Plaintiff argues that he made five or six attempts over the course of five years to access his property, but found that the entrance was impassable. Pltf.'s Br. at 2. Interestingly, he confirms that the pit was in plain view but, he argues, "[o]nly if one found a way to access the property." Id. at 4. Plaintiff's neighbor found a way to access the property (Pltf.'s Br. at 3) and, had Plaintiff acted diligently, he also could have gained access to his property.[4/] It simply strains credulity that Plaintiff could not access his property over the course of five years. Certainly, Plaintiff's property could be no more difficult to access than the remote property at issue in Catellus. Moreover, it is fair to charge Plaintiff with knowledge of what happens on his land, especially in this case where the Plaintiff was given prior notice that government engineers intended to go upon his property to repair the road that transects it.

Because Plaintiff's takings claim was not inherently unknowable, the statute of limitations should not be tolled. See Catellus, 31 Fed. Cl. at 408-409; see also Entines v. United

[4/] Indeed, based on Plaintiff's allegations, it is clear that the United States has been able to access the property via the road. See Compl. ¶ 4.2 ("The 'River Road' *is used* by the United States Border Patrol . . .") (emphasis added); see also Pltf's Br. at 2.

States, 39 Fed. Cl. 673, 679-82 (1997) (following Catellus and holding that Filipino World War II veterans' claims were not inherently unknowable and were time barred); Catawba Indian Tribe of S.C. v. United States, 982 F.2d 1564, 1572 (Fed. Cir. 1993) (noting that a traditional ground for equitable tolling of a statute of limitations is to avoid penalizing a plaintiff because he "did not and could not have known of the *facts* upon which the claim is based" and refusing to toll the statute of limitations were plaintiffs merely misunderstood the law) (underlining added, italics as in original); Mobley Constr. Co. v. United States, 68 Fed. Cl. 434, 439-40 (2005) (likelihood that plaintiff would suffer economic damage when Corps of Engineers restricted its dredging permit was not inherently unknowable).[5/]

**B. Plaintiff's Attack on LaFont v. United States Is of No Avail**

In its opening brief, the United States discusses LaFont v. United States, 17 Cl. Ct. 837 (1989), in support of its argument that Plaintiffs' takings claim accrued in April, 1999, starting the running of the statute of limitations. In his opposition brief, Plaintiff does not challenge the United States' argument that his takings claim accrued in April, 1999, and he apparently concedes the point. See Pltf.'s Br. at 4-5. Consequently, his argument that LaFont is distinguishable on its facts appears irrelevant.[6/]

---

[5/] Plaintiff suggests that he first exhausted his administrative remedies before filing suit. See Pltf.'s Br. at 3. However, Plaintiff does not argue, nor could he, that the statute of limitations was tolled while he exhausted his administrative remedies. See Soriano v. United States, 77 S.Ct. 269, 274-75 (1957) (rejecting petitioner's argument that his takings action could not be filed until after the administrative denial of his claim because "it would be a limitless extension of the period of limitation that Congress expressly provided . . .").

[6/] Plaintiff's reading of the facts in LaFont actually is somewhat flawed as the injuries complained of in that case arose out of the "deposit[] of dredged spoil from the Waterway on plaintiff's leased waterbottom thereby destroying the waterbottom . . . for cultivation of oysters in

(continued...)

Nevertheless, similar to the plaintiff in LaFont who was aware that the Army Corps of Engineers was performing dredging operations in the waterway (LaFont, 17 Cl. Ct. at 842), the Plaintiff here was aware that the United States was performing road work on his property. Pltf.'s Br. at 2. As in LaFont, there is no allegation in this case that the government concealed its operations "so that plaintiff was unaware of its existence." Id. The LaFont court concluded, therefore, that the "plaintiff was, or should have been, on inquiry that he had a potential claim on or before [the date upon which the dredging was completed]." Id. This Court similarly should find that Plaintiff "was, or should have been, on inquiry that he had a potential claim." Indeed, Plaintiff now argues that the "Government completely mis-constructed the road" (Pltf.'s Br. at 5), further indicating that he should have been "on inquiry that he had a potential claim."

The fact that the plaintiff in LaFont did not discover the damages to his leased oyster bed until three weeks after the project was completed did not stop the statute of limitations from running in that case. LaFont, 17 Ct. Cl. at 843. Similarly, Plaintiff's late discovery of the excavated pit on his property should not stop the statute of limitations from running here. The statute of limitations began to run at the end of April, 1999, and expired at the end of April, 2005, nineteen months before Plaintiff filed suit on January 9, 2007.

///

---

[6/](...continued)
the future," LaFont, 17 Cl. Ct. at 839, rather than the "removal of the bed of the waterway, " as Plaintiff argues. See Pltf.'s Br. at 4-5.

**CONCLUSION**

Plaintiff's claim accrued by the end of April, 1999 and expired by the end of April, 2005. Plaintiff failed to show any ground for tolling the statute of limitations. Accordingly, Plaintiff's takings claim is time-barred and this action must be dismissed with prejudice to refiling.

Respectfully submitted,

MATTHEW J. McKEOWN
Environment and Natural Resources Division
Acting Assistant Attorney General

/s/ Bruce K. Trauben
Bruce K. Trauben
Natural Resources Section
Environment and& Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
(202) 305-0238 (phone)
(202) 305-0267 (fax)

OF COUNSEL:
Major Patrick Gary
U.S. Army Litigation
901 N. Stuart Street
Suite 400
Arlington, VA 22203
(703) 696-1618

Dated: May 2, 2007