# EXHIBIT 8

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ROBERT INGRUM** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 07-12L** |
| | ) | **Judge Mary Ellen Coster Williams** |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S FIRST SUPPLEMENTAL RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rules of the United States Court of Federal Claims, Plaintiff, Robert Ingrum produces the following responses to Defendants first set of interrogatories and requests for production of documents:

Respectfully submitted,

MINTON, BURTON, FOSTER & COLLINS
A Professional Corporation
1100 Guadalupe Street
Austin, Texas 78701
Telephone: (512) 476-4873
Facsimile: (512) 479-8315

By: John C. Carsey /s/
John C. Carsey

ATTORNEYS FOR PLAINTIFF

ROBERT INGRUM

## INTERROGATORIES

1. Please identify as precisely as possible on a map or plat drawn to scale or on a photograph, indicating the scale, the location of the pit allegedly left on Plaintiff's property by Defendant, including the borders of the pit, depicting the relationship of the pit to any and all roads or trails, and identifying the points on the map from which the pit may be observed.

**Road through the property is approximately 2 ¾ miles. The gravel pit is about half way down and close to the road. Size of the pit is approximately 175' x 200' with a depth of 20' plus or minus at the cut. There are smaller pits along the road.**

2. Please identify the individual who allegedly brought to Plaintiff, s attention the pit allegedly left on Plaintiff's property by Defendant.

**A migrant worker named "Lupe" who worked part of the year on the adjoining ranch as a ranch hand used to take the back trail by horseback or four-wheeler through my property down to the river to fish. He told me they had taken a lot of gravel off the ranch. I do not know Lupe's full name or his address. He is presumably from Mexico, but I do not know where.**

3. Please identify with as much detail as possible each and every visit made by you to the property at issue at any time (whether on land or by air), including but not limited to the date of the visit, the time of day, the length of time spent on the property, your mode of transportation to the property (for example, by car, plane, helicopter, SUV, truck, etc.), your mode of transportation while on or over the property (for example, by car, plane, helicopter, SUV, truck, ATV, by foot, etc.), a description of the area of the property visited, the identity of any and all individuals who observed your visit to the property, and indicating which of each visit to the property included a visit to the

area where the alleged pit is located.

**Defendant objects to this interrogatory as unduly burdensome. I made many trips out there prior to March 1999 as I had had the property under contract for quite a while. Following the re-construction of the road, I was unable to access the property on the occasions that I tried due to the muddy and wet conditions of the road at the entrance to the property. I cannot pinpoint the date, the time of day, nor the length of each and every visit. I always traveled to the property by car.**

4. Please state with as much detail as possible the basis for your contention that a pit was dug on your property by the Defendant from March through April, 1999.

**I was attempting to resell part of the property and to have an interested buyer from when the property did close. I showed the property quite a bit and was very familiar with the road through the ranch. Once the government started rebuilding the road in March, I was unable to enter the ranch. An interested buyer, whose name I do not recall, said that the men working on the road were just out of boot camp and were practicing road building. After they left, they had created a lake in the first few hundred feet of the road making the middle of the road lower than the sides so whenever it rained water ran down the middle and stayed there. That portion of the road – several hundred feet – has been full of water and deep mud pretty much constantly ever since. The road has not been passable for even one day this year. The U.S. Border Patrol has access to every vehicle known to man-kind – from a hummer to several kinds of SUV's and four-wheelers – and they have been unable to access the property all year. In late 2004 I heard from a migrant worker known to me only as "Lupe" that a large amount of gravel had been taken off the ranch. Early in 2005, I walked back there and discovered the pit, took pictures, and had my Red Wing boots sucked off my feet in the deep much and walked out barefoot. Presidio County is one of the poorest, least populated counties in the United States and Candelaria (the ranch is about 4 miles up-river) is a remote town of adobe building and house trailers and with population of about 75 people. These are either elderly or migrant workers. Presidio County's only road equipment appears to be one old beat-up maintainer. No one can recall any county equipment going up-river from Candelaria. The government built a gymnasium-size building and had a full company of men in the Candelaria area working on the road. I have called the Border Patrol many times during the last few years to see if the road is open and have talked to a lot of different Border Patrol agents at the Marfa office, the Alpine office, the Presidio office and the station five miles south of Marfa on Hwy 67.**

5. Please describe with as much detail as possible, the material allegedly taken by the Defendant from the pit, including but not limited to the composition of the material and the volume of material in cubic yards and tonnage, and the methodology used to measure or estimate the volume

of material allegedly removed from the pit.

**At this point, I have calculated from the dimensions of the pit that approximately 35,000.00 sq. ft. of soil was removed. I do not know the tonnage. The material consisted of rocks and dirt native to the area. I intend to have the pit surveyed and will provide the survey and exact dimensions as soon as possible.**

6. Please state in detail all facts relating to your claim that the material allegedly removed from your property by Defendant was worth $324,000.00 at the time it allegedly was taken, and please identify the source(s) for your information relating to the alleged value of the material.

**The nearest gravel pit is located in Presidio, about 50 miles down –river. A 14-yard truckload would cost $175.00 delivered. Each truckload would cover about 20 feet of road and cost $46,200.00 per mile. They re-built approximately 7 miles of road. If you figure on 7 miles times the $46,200.00 per mile, you have your $324,000.00. No telling how much more gravel was taken for the rest of the road that was built.**

7. Please identify all facts relating to your contention that the material allegedly removed from the pit was taken off of your property, specifying where and how the material allegedly removed from the pit by Defendant was used, and indicating whether the location to which the material was allegedly taken is owned by you.

**The location to which the material was taken is owned by the county. It is County Road 170. Since I did not see the material removed, I do not know specifically where and how the material was used. It stands to reason that the material was used for the road on which Defendant was working.**

8. Please identify each and every time you attempted to visit the property after April, 1999, <u>but failed to do so</u>, explaining in as much detail as possible, the date of your attempt, the weather conditions, the conditions of your property that you observed, where you attempted to access the property, the road or trail used in your attempt to access the property, how you attempted to access the property including but not limited to the mode of transportation used and whether any alternative

mode of transportation was sought and/or used at the time of each thwarted attempt to access the property, why you could not access the property, and the identity of any and all individuals who may have observed each attempt to access your property.

**Defendant objects to this interrogatory as unduly burdensome. Although I made many trips out there prior to March 1999, following the re-construction of the road, I was unable to access the property on the occasions that I tried due to the muddy and wet conditions of the road at the entrance to the property. I cannot pinpoint the date, the time of day, nor the length of each and every attempt. Primarily, I contacted the Border Patrol by telephone and was informed that the entrance to the property was impassable. I always traveled to the property by auto. I attempted to drive through the entrance and got stuck. When I tried to walk through the entrance, I had my boots sucked off of my feet.**

9. Please describe each and every time after April, 1999, that you contacted someone for information about the accessibility or conditions of your property, including but not limited to the date of each contact, the identity of the person contacted, and the information you obtained from that person.

**Defendant objects to this interrogatory as unduly burdensome. Subject to this objection, I have provided phone records containing evidence of my phone calls to check on the accessibility of the property.**

10. Please identify the purchase price of the property.

**$98,297.40.**

11. Please identify the roads you use to travel from your home in or near Austin, Texas to the property at issue, including the type and distance, in miles, of the roads you use (such as city street, inter-state highway, the number of lanes, etc.), whether paved or unpaved, and the time it takes to traverse each road.

**Interstate Highway 35 for 80 miles. Hwy 90 for 395 miles. Hwy 67 for 44 miles. County Road 170 for approximately 12 miles. All are paved to Candelaria. The trip takes me about 12 hours from Austin, Texas.**