**UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **ROBERT INGRUM,** | ) | **No. 07-12L** |
| **Plaintiff,** | ) | |
| **v.** | ) | **Hon. Mary Ellen Coster Williams** |
| **THE UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S REPLY IN SUPPORT**
**OF ITS RENEWED MOTION TO DISMISS**

Defendant, the United States, hereby submits its Reply in support of its January 25, 2008, Renewed Motion to Dismiss.

## I. INTRODUCTION

Plaintiff's arguments in opposition to Defendant's motion are without merit for a number of reasons. Plaintiff now admits that there were times when he could have gained access to his property via River Road, but chose not to do so because it was inconvenient. See Pl.'s Resp. to Def.'s Renewed Mot. Dismiss Mem. Supp. Thereof at 3 (hereinafter, "Pl.'s Mem."). Whether it would have been inconvenient to access his property on one day or another, or from one direction or another, does not render the alleged takings claim inherently unknowable as a matter of law.

Moreover, Mr. Ingrum does not deny that the excavation site is in plain view from the road, but asserts that it is not in view from the entrance to his property, about a mile away. See Pl.'s Mem. at 5.[1/] Regardless, Mr. Ingrum does not dispute that the excavation site is in plain

[1/] See also Ingrum Tr. at 47:19-48-21, 94:9-16 (locating the "pit" in Ex. 6 to Def.'s Renewed Mot. Dismiss and Mem. Supp. Thereof (hereinafter, "Def.'s Mem."), and stating that the road runs about two to three miles along his property) (attached hereto as Ex. A). All other citations to Ingrum Tr., herein, are attached at Ex. 2 to Def.'s Mem.

view from the road, and he does not contend that the government concealed or hid either the road or excavation site in any way.

Plaintiff's argument that he had no cause to inspect his property is not supported by the fact that he was aware that road work was being performed on his property. Additionally, Mr. Ingrum ignores the unqualified permission he granted to the government on February 26, 1999, to perform work on the road. As a matter of law, Mr. Ingrum is charged with knowing the conditions on his property, and the most basic level of due diligence would have led to the discovery of the excavation site and his potential takings claim.

Finally, Mr. Ingrum's attempt to distinguish LaFont falls short, as discussed below. For the reasons set out in this Reply and in Defendant's January 25, 2007 Memorandum, the Complaint should be dismissed.

**II. ARGUMENT**

The United States makes clear in its renewed motion to dismiss that this action was untimely filed under 28 U.S.C. § 2501. See Def.'s Mem. at 14-19. To have been timely brought, Plaintiff's takings claim should have been filed no later than April, 2005, but Plaintiff did not file this action until 2007. In his opposition papers, Plaintiff fails to raise any issue of fact or assert any legal argument that has any merit. Indeed, Mr. Ingrum even fails to submit any evidence supporting his contention that the federal government removed material from his property in 1999. Mr. Ingrum thus fails to bring his takings claim within the Court's jurisdiction. Accordingly, this action should be dismissed.

As discussed in more detail, below, Plaintiff does not dispute any fact proffered by Defendant in its motion papers or supporting declarations. See Def.'s Mem. at 4-9; see also

Declaration of Terry M. Norman ("Norman Decl."); Declaration of Humberto Hernandez ("Hernandez Decl."). Rather, Plaintiff argues in his opposition papers that the excavation site was inherently unknowable, because "Plaintiff had no reason to believe that the Defendant had violated the Rights of Entry agreement ["ROE"] . . . ."[2/] See Pl.'s Mem. at 1, 4. Plaintiff contends that, in the ROE, he did not grant the United States permission to use material from his property, citing an August 31, 2004 memorandum that apparently was prepared in response to an inquiry from Congressman Lamar Smith on Mr. Ingrum's behalf. See Pl.'s Mem. at 4-5; see also Pl.'s Mem., Ex. 1 at 1. Plaintiff argues that he "was unable to access his property via normal means because of Defendant's malfeasance in constructing the road improperly, and was completely unaware of the existence of the excavation area that revealed the Defendant's breach of the [ROE]."[3/] Pl.'s Mem. at 4 (emphasis added).

For the reasons discussed below, Plaintiff's arguments should be rejected.

**A. Plaintiff's Takings Claim Accrued no Later than April 1999, and Therefore Was Untimely When Filed in January 2007**

First, Plaintiff does not dispute that he bears the burden of showing that the Court has jurisdiction by a preponderance of the evidence. See Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988) (Plaintiff must come forward with evidence

---

[2/] To the extent that Plaintiff contends that the statute of limitations, 28 U.S.C. § 2501, should be equitably tolled, that argument must fail in light of the Supreme Court's recent decision in John R. Sand & Gravel Co. v. United States, 128 S.Ct. 750, 753-54 (2008).

[3/] Despite the number of times he may repeat the conclusory statement, Plaintiff presents absolutely no evidence that the federal government improperly constructed the road, which is a county road, running across a county-held right-of-way, and is periodically maintained by the county. See Norman Decl., ¶ 5, 12, 18. Regardless, Mr. Ingrum does not dispute that he could have gained access to his property from the north, rendering irrelevant his contention that the road was improperly constructed by the federal government.

establishing the court's jurisdiction once it has been put into question); see also Patton v. United States, 64 Fed. Cl. 768, 773 (2005). Defendant's argument that Plaintiff failed to timely file his takings claim, puts the Court's jurisdiction into question. See John R. Sand & Gravel Co., 128 S.Ct. at 753. In his response to Defendant's motion to dismiss, however, Plaintiff fails to meet his burden of proof. See Bond v. United States, 47 Fed. Cl. 641, 647 (2000) ("[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss.") (quoting Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981)) (internal quotation marks omitted). This action, therefore, must be dismissed.

Plaintiff does not refute any statement of fact proffered by Defendant. Mr. Ingrum does not challenge the government's assertion of fact that the excavation site is in plain view from the road. See Def.'s Mem. at 15; see also Norman Decl., ¶ 22, Exs. E & H; Hernandez Decl., ¶ 8. Additionally, Plaintiff does not dispute that his property also is accessible from the north. See Def.'s Mem. at 15; see also Norman Decl., ¶ 20; Hernandez Decl., ¶ 9. Moreover, Plaintiff does not dispute that the Border Patrol informed him at times that the road was passable – a fact that he now admits.[4/] See Feb. 25, 2008 Ingrum Aff., ¶ 5; see also Pl.'s Mem. at 3; Def.'s Mem. at 16; Hernandez Decl., ¶¶ 12, 13. Mr. Ingrum now asserts that, although he was told that the road

---

[4/] That Plaintiff now admits that he was told by the Border Patrol on occasion that the road was passable is particularly troubling, because Mr. Ingrum previously attested in a sworn affidavit that he "stayed in frequent contact with the Border Patrol by telephone on numerous occasions to determine if I was able to access my property if I made the arduous drive from Austin, only to be told that the entrance to the property was impassable." April 20, 2007 Ingrum Aff., ¶ 5 (Dkt. #9) (emphasis added); see also April 20, 2007 Pl.'s Mem. at 2-3 (Dkt. #9). The Court quoted Mr. Ingrum's April 20, 2007 sworn statement at length, when denying Defendant's February 20, 2007, motion to dismiss. See Mem. Op. and Order Denying Def.'s Mot. Dismiss at 2 (filed June 26, 2007) (quoting April 20, 2007 Ingrum Aff., ¶ 5) (Dkt. #11).

was passable, it was not convenient for him to visit his property. See Pl.'s Mem. at 3; see also Feb. 25, 2008 Ingrum Aff., ¶ 5.

Although not articulated in his brief, Plaintiff effectively is arguing that his claim did not accrue until May 2004, when Plaintiff alleges that he had actual knowledge of the excavation site. Plaintiff, thus, is urging the Court to apply a subjective standard for establishing when a claim accrues. "[B]ut the legal standard is clearly objective. . . . A cause of action accrues when plaintiff should have known of its existence." Catellus Dev. Corp. v. United States, 31 Fed. Cl. 399, 408 n.8 (1994) (citing Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1577 (Fed. Cir. 1988)).

In Catellus, the plaintiff owned about 1,920 acres of land adjacent to the Marine Corps Air Ground Combat Center at Twenty-Nine Palms, California, in the Mojave Desert. Catellus, 31 Fed. Cl. at 400. Catellus' property was so remote, the court noted, "that it is accessible only by helicopter or by a combination of off-road driving and hiking." Id. Apparently, no one from Catellus or its corporate predecessors had viewed the property from the time it was acquired in 1930 until 1990, when the Marine Corps gave company representatives a helicopter tour. Id. For decades, the United States used Catellus' land for artillery and anti-aircraft training, first under a lease in effect from 1952 to 1958, and thereafter under the erroneous belief that the land was part of the Marine Corps' installation. Id. at 400, 402. Catellus filed a takings action on July 24, 1991, after the Marine Corps told Catellus in 1989 that its land accidentally was used for live target practice and that "it is a virtual certainty that some unexploded ordnance is present there, above and below the surface." Id. at 401-03. The United States moved to dismiss on the

ground that Catellus' takings claim was barred by the statute of limitations, and the Court of Federal Claims agreed.

Catellus argued that the statute of limitations should not begin to run until 1989, when the Marine Corps informed Catellus that it had used the property for ordinance training. Id. at 408 n.8. The Catellus court refused to apply a subjective standard for establishing when a claim accrues, finding that, "[n]otwithstanding the remoteness of the property, as record owner Catellus should have been aware that its property was being hit with ordnance." Id. The court continued, "[t]he repeated bombing of an open space can hardly be considered a surreptitious act, and when the government engages in such open and notorious actions over a period of years, the landowner is on inquiry that it has a potential claim, and the statute of limitations begins to run." Id. (citing Coastal Petroleum Co. v. United States, 228 Ct. Cl. 864, 866 (1981)). The court, therefore, concluded that any takings claim that Catellus had based on the ordnance training accrued more than six years before suit was filed. Id.

Similarly, in Coastal Petroleum, the plaintiff alleged that the government took its limestone when constructing the Cross Florida Barge Canal ("Canal"), seven years prior to when suit was filed. Coastal Petroleum, 228 Ct. Cl. at 865-66. Plaintiff alleged that it was not aware of its potential claim against the government until 1974, although it knew about the construction of the Canal. Id. at 866. However, the court explained that, to "show that its ignorance of the facts is excusable, plaintiff must show either that defendant has concealed its acts with the result that plaintiff was unaware of the existence of a cause of action or that the nature of plaintiff's injury was such that it was inherently unknowable at the time the cause of action accrued." Id. (citing Japanese War Notes Claimants Ass'n v. United States, 178 Ct. Cl. 630, 634, cert. denied,

389 U.S. 971 (1967)). Coastal Petroleum did not contend that the government attempted to conceal its construction of the Canal, but that it "was simply ignorant of the injury to its mineral rights . . . ." Id. at 867. This argument was rejected by the court, which explained that, "[w]here the actions of the government are open and notorious, we have pointed out that plaintiff is on inquiry as to its possible injury." Id. (citing Kabua v. United States, 212 Ct. Cl. 160, 164-65 (1976), cert. denied, 434 U.S. 821 (1977)). The statute of limitations began to run, therefore, upon the completion of the Canal, when the plaintiff was on inquiry that it had a potential claim. Id.

Here, Mr. Ingrum knew that the government was performing work on the road running across his property, because he signed a note on February 26, 1999, granting the government permission to do the work.[5/] See Norman Decl., Ex. F at US00672. Regardless of whether the February 26, 1999 note or the March 13, 1999 ROE granted permission to the government to use materials from his property, there is no dispute that Mr. Ingrum knew that road work was being performed, and he does not contend that the government attempted to conceal the excavation site.[6/] As in Coastal Petroleum, supra, Mr. Ingrum's alleged takings claim therefore accrued no

---

[5/] Although addressed to Mr. Alan Wittenberg, Mr. Ingrum expected Mr. Wittenberg would forward to the government his February 26, 1999 grant of access. See Ingrum Tr. at 55:1-20.

[6/] Mr. Ingrum argues that he did not discover the excavation site for five years, until 2004, because he "had no reason to inquire or investigate whether the Government had violated the terms of the [ROE]." Pl.'s Mem. at 5. But this argument is without merit for several reasons. First, as discussed above, Mr. Ingrum's argument erroneously is based upon a subjective standard, while an objective standard applies. Second, when he executed the March 13, 1999 ROE, Mr. Ingrum chose not to provide an answer to item No. 6: "The Owner (does/does not) grant the Government the right to use any buildings, timber *or any other* products of the land." Norman Decl., Ex. F at US00671 (emphasis as in original); see also Pl.'s Mem. at 2; Ingrum Tr. at 52:23-53:18 (testifying that he had not seen a copy of the ROE with either "does" or "does not" circled or crossed out). Mr. Ingrum easily could have circled "does not," and thereby avoid

later than April 1999, when the work was completed. Moreover, "[i]t is fair to charge a property owner with knowledge of what happens on his land, and the essence of [plaintiff's] claim could have been discovered with the type of inquiry expected of a diligent property owner." Catellus, 31 Fed. Cl. at 408. Mr. Ingrum was "on inquiry as to the threat to [his] property rights" in 1999, and any takings claim he may have had accrued at that time and expired in 2005.[7/] Coastal Petroleum, 228 Ct. Cl. at 867.

Moreover, Mr. Ingrum's contention that he did not gain access to his property because it was inconvenient, does not render his claim "inherently unknowable," as the Catellus court observed:

> When a claim is inherently unknowable it does not mean that the claim is "somewhat difficult to discover," or is "not entirely obvious." That which is inherently unknowable is that which is unknowable by its very essence . . . .

Catellus, 31 Fed. Cl. at 407. In sum, Mr. Ingrum has no excuse for his professed ignorance of the excavation site and his potential takings claim.[8/]

---

creating any ambiguity in the ROE. That Mr. Ingrum was offered the opportunity to expressly grant or deny the right to use material from his property, but chose to remain silent, supports the government's position that he was on inquiry of potential injury to his property. Moreover, Mr. Ingrum's reliance upon the hearsay, legal conclusion of Col. Disney is misplaced. See Pl.'s Mem. at 4, Ex. 1 at 2. Col. Disney's memorandum provides no excuse for Mr. Ingrum's failure to exercise due diligence and inspect his property after being put on notice of the threat of potential injury.

[7/] Even under Texas law regarding claims for permanent injury to property, "knowledge of facts that could cause a reasonably prudent person to make an inquiry that would lead to discovery of the cause of action is in the law equivalent to knowledge of the cause of action for limitations purposes." Mitchell Energy Corp. v. Bartlett, 958 S.W.2d 430, 436 (Tex. App. 1997) (internal quotation marks and citations omitted).

[8/] Plaintiff suggests that the government's argument is like "Kenneth Lay telling Enron's employees, 'Although I stole your retirement monies without your knowledge and covered my tracks meticulously, if you had just investigated me you would have been able to discover my misdeeds.'" Pl.'s Mem. at 4-5. But this argument is without merit because, here, there is no

Because Plaintiff's potential takings claim was not inherently unknowable, it accrued no later than April 1999, and was untimely filed in January 2007.

**B. Plaintiff's Attack on LaFont v. United States Is of No Avail**

Plaintiff attempts to distinguish LaFont v. United States, 17 Cl. Ct. 837 (1989), because LaFont involved oyster beds "located on the bed of the waterway," while this case involves grading and reshaping a gravel road. Pl.'s Mem. at 5. To the contrary, LaFont strongly supports the government's position, and Plaintiff's attempt to distinguish it falls short.

Like the plaintiff in LaFont who was aware that the Army Corps of Engineers was performing dredging operations in the waterway (LaFont, 17 Cl. Ct. at 842), Mr. Ingrum was aware that the United States was performing road work on his property, as discussed above. As in LaFont, there is no allegation in this case that the government concealed its operations "so that plaintiff was unaware of its existence." Id. The LaFont court concluded, therefore, that the "plaintiff was, or should have been, on inquiry that he had a potential claim on or before [the date upon which the dredging was completed]." Id. This Court similarly should find that Plaintiff "was, or should have been, on inquiry that he had a potential claim."

The fact that the plaintiff in LaFont did not discover the damages to his leased oyster bed until three weeks after the project was completed did not stop the statute of limitations from running in that case. LaFont, 17 Ct. Cl. at 843. Similarly, Plaintiff's late discovery of the excavated pit on his property should not stop the statute of limitations from running here. The

---

dispute that Mr. Ingrum was on notice that road work was being performed, the government acted in the open, and covered nothing – the road construction and excavation site are in plain view. Additionally, Plaintiff does not allege that the government attempted to conceal anything from him. Plaintiff's analogy to an unattributed statement by Mr. Lay, therefore, is inapposite.

statute of limitations began to run no later than the end of April, 1999, and expired at the end of April, 2005, nineteen months before Plaintiff filed suit on January 9, 2007.

## III. CONCLUSION

Because Plaintiff's claim accrued no later than April, 1999, it expired by the end of April, 2005. Plaintiff failed to show any support for his argument that his claim did not accrue until May 2004. Accordingly, Plaintiff's takings claim is time-barred and this action must be dismissed.

Respectfully submitted,

RONALD J. TENPAS
Environment and Natural Resources Division
Assistant Attorney General

/s/ Bruce K. Trauben
Bruce K. Trauben
Natural Resources Section
Environment and& Natural Resources Division
United States Department of Justice
P.O. Box 663
Washington, D.C. 20044-0663
(202) 305-0238 (phone)
(202) 305-0267 (fax)

OF COUNSEL:
Cpt. Lisa Satterfield
U.S. Army Litigation
901 N. Stuart Street
Suite 400
Arlington, VA 22203
(703) 696-1564

Dated: March 10, 2008